UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MICHAEL RICHARDSON,

      Plaintiff,

                                          CASE NO.: 5:12-CV-00201-RS-CJK

vs.

BAY DISTRICT SCHOOLS,

      Defendant.

_____/

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      Defendant, Bay District Schools ("BDS"), pursuant to Federal Rule of Civil Procedure 56, moves for summary judgment against Plaintiff, Michael Richardson ("Richardson"). Judgment for BDS is proper here because: (i) Richardson has not suffered gender discrimination under Title VII because of *his* sex, and (ii) Richardson failed to reasonably comply with BDS established reporting procedures, and once he did, BDS took prompt and immediate action to stop the alleged misconduct.  In compliance with Local Rules 7.1(a) and 56.1, Defendant files this Memorandum of Law and a separate short and concise Statement of Undisputed Material Facts.

## MEMORANDUM OF LAW

### Summary

This case is about criminal conduct by a BDS supervisor, Jimmy Thompson ("Thompson"), not discrimination. Thompson, the head of the BDS Maintenance Department, and Richardson, a comptroller in the same department, were good friends.   They frequently went to lunch together. Sometimes, Thompson would discuss Richardson's wife and other Asian women at lunch. Thompson eventually desired to have a sexual relationship with Richardson's wife and asked him if he could do so.  Richardson refused.

Thompson later offered Richardson money to have sex with his wife. Richardson reported this behavior to his supervisor, but asked him not to do anything about it until Richardson came back from vacation. Upon returning from vacation, Richardson reported the incident to BDS administration.  The same day as Richardson's report, BDS administration reported Thompson's criminal conduct to the Bay County Sheriff's Office (the "Sheriff").  The Sheriff set up a quick sting operation and arrested Thompson for solicitation. Within days of his arrest, Thompson resigned his employment. BDS demoted Richardson's supervisor for his failure to make an immediate report of Thompson's conduct to BDS administration, and Richardson remains employed with BDS at his same position and pay. Shortly thereafter, however, Richardson filed an administrative charge alleging that _he_ was the subject of sexual discrimination in the workplace.  This lawsuit followed.

Unsurprisingly, to be actionable under Title VII, discrimination in the workplace must be based on the complaining employee's sex, not someone else's. And the discrimination must be broadly applied to a protected gender class, not based on a particular individual or an individual's relationship with someone else. Richardson simply did not suffer any actionable workplace discrimination when his boss tried to have sex with his wife, no matter how repugnant or offensive that may be. Additionally, Richardson failed to reasonably comply with established BDS reporting procedures.  There were many avenues to report this conduct, but he refused to do so for whatever reason. When he finally did, he asked that it not be reported further up so he could enjoy his vacation. Once he finally agreed to report it to the proper officials, BDS took immediate action resulting in the subsequent arrest and dismissal of Thompson.

## Procedural History

On June 26, 2012, Richardson filed a one-count complaint against BDS pursuant to 42 U.S.C. Section 2000e, et seq. ("Title VII") and 42 U.S.C. Section 1981a for alleged gender discrimination. (Doc. 1). BDS responded with a motion to dismiss arguing that Richardson could not state a claim for gender discrimination because Thompson's conduct was not based on Richardson's sex. (Doc. 8). Richardson countered with an Amended Complaint that alleged more facts. (Doc. 11). Richardson's one-count Amended Complaint alleged both hostile work environment

and quid pro quo discrimination claims, although how is not exactly clear.[1] (See

Doc.11).   The parties have completed discovery and mediation and have not been

able to resolve this case.

## Undisputed Material Facts

A separate Statement of Undisputed Material Facts has been filed concurrently with

this Motion. For the purposes of this Motion only, Defendant assumes all disputed

material facts in this matter are resolved in the Plaintiff's favor.

## Legal Argument

### I.     Standard of Review

#### A.  Legal Standard for Granting Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of fact is "material" if

it is identified by the relevant substantive law as a legal element of the cause of

action. Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).   An

issue is "genuine" if "the record taken as a whole could lead a rational trier of fact to

find for the nonmoving party." Id. "Speculative evidence is insufficient to enable the

---

[1] Richardson also claimed that he was terminated by BDS in both the Complaint and
Amended Complaint. (Doc. 1 ¶ 19; Doc. 11 ¶ 16). This is false and remains uncorrected.
Richardson remains employed by BDS in the same position he has held for the last several
years. (Def. Statement of Facts, ¶ 24)

nonmoving party to avoid summary judgment." <u>Snair v. City of Clearwater</u>, 817 F.Supp.108, 113 (M.D. Fla. 1993).

It is the movant's burden to demonstrate the absence of a genuine issue of material fact. <u>Tipton</u>, 965 F.2d at 998. Once this is accomplished, an adverse party must "set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). The existence of a mere scintilla of evidence presented in support of the adverse party's position is insufficient to defeat a motion for summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

"Summary judgments for defendants are not rare in employment discrimination cases." <u>Krop v. Nicholson</u>, 506 F.Supp.2d 1170 (M.D. Fla. 2007). As the Eleventh Circuit Court of Appeals has made clear, summary judgment is a proper vehicle for resolving claims of employment discrimination even though such claims often turn on an employer's motivation and intent. <u>Chapman v. AI Transport,</u> 229 F.3d 1012, 1025-27 (11th Cir. 2000).

**B.  Legal Standard for Sex Discrimination Claims under Title VII**

Title VII expressly forbids discrimination by an employer against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of that individual's sex. <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 751 (1998); 42 U.S.C.A. § 2000e-2(a)(1).  To establish a *prima facie* case of sexual harassment under Title VII, Richardson must show that (1) he belongs to a

protected group; (2) he has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) the harassment was based on Richardson's sex; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of Richardson's employment and create a discriminatorily abusive working environment; and (5) there is a basis for holding BDS liable.  Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808 (11th Cir. 2010); Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999).

Claims for alleged violations of Title VII's anti-discrimination mandate appear in two forms:  "(1) harassment which culminates in a 'tangible employment action,' such as discharge, demotion or undesirable reassignment, and (2) harassment in which no adverse 'tangible employment action' is taken but which is sufficient to constructively alter an employee's working conditions."  Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1311 (11th Cir. 2001) (internal citations omitted).  Richardson's Complaint appears to plead his claim under both of these theories.

II.  **BDS is Entitled to Summary Judgment Because Richardson Has Not Established That He Experienced Any Discriminatory Treatment Because of His Sex.**

A.  **Legal Requirement That Title VII Claims Be "Because of Sex"**

"[I]t is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of [the Plaintiff's] sex."  Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002)

(quoting Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001)).  This is a threshold issue for relief under the statute and an essential element in all Title VII claims.  So, in order to establish his *prima facie* case for gender discrimination, Richardson must demonstrate that "but for" *his* gender, he would not have been subjected to Thompson's alleged undesirable conduct.  Smith v. First Union Nat. Bank, 202 F.3d 234, 242 (4th Cir. 2000) (citing Wrightson v. Pizza Hut of America, Inc., 99 F.3d 138, 142 (4th Cir.1996)).

Although the alleged harasser and victim need not be of opposite sexes in order for the harassment to be actionable under Title VII, the Supreme Court made abundantly clear that the gravamen of all Title VII claims must still come back to discrimination or disparate treatment on the basis of a class of persons that is protected under Title VII. See Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998).  In fact, the Court's opinion in Oncale is replete with an emphasis of this precise point:

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "*discriminat[ion]* ... because of ... *sex*." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."

Id., at 80 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring) (emphasis in original).  By way of example, the Court examined three

7

particular evidentiary routes a plaintiff might follow in order to establish that an alleged harasser of the same-sex as the plaintiff has committed actionable discrimination under Title VII:

(1)     when the plaintiff presents credible evidence that the harasser is homosexual, providing a basis for the inference that the harasser's conduct or proposals would not have been made to someone of the *opposite* sex;

(2)     when the harasser's conduct demonstrates a general hostility toward members of the harasser's own gender in the workplace; and

(3)     when comparative evidence shows that the alleged harasser's treatment of other individuals in the workplace was disparate with regard to gender.

Id. at 80-81.

Each of the Court's examples noticeably demonstrate that a plaintiff's alleged harassment must have been aimed at the plaintiff in a way that demonstrates the harasser's animus or disparate treatment of one gender as opposed to the other. Further making this point, the Court stated that no matter which "evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue . . . actually constituted '*discrimina[tion]* ... because of ... sex.'" Id. at 81 (emphasis in original).

Following the Supreme Court's opinion in Oncale, the circuit courts, including the Eleventh Circuit, have consistently maintained that the distinction between actionable and non-actionable sexual conduct. Sexual conduct that is not discriminatory - no matter how severe, pervasive, or offensive – is not actionable.

Likewise, sexual conduct that is discriminatory is actionable.  As stated by the Eleventh Circuit, courts are guided by the "bedrock principle that not all objectionable conduct or language amounts to discrimination under Title VII." Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 809 (11th Cir. 2010).[2]  As a result, "general vulgarity or references to sex that are *indiscriminate* in nature will not, standing alone, generally be actionable" under Title VII.  Id. (emphasis added).

Although the judiciary long ago determined that sexual harassment is a subcategory of Title VII discrimination (when the harassment itself is

---

[2] See also, Davis v. Coastal Intern. Sec., Inc., 275 F.3d 1119, 1124 (D.C. Cir. 2002), where the plaintiff, in an attempt to invoke Oncale's third method of proof, argued that because his same-sex harassers directed their behavior at him, and not at any female employees, "they systematically treated men differently than women."  The Second District rejected this argument and stated the following notwithstanding that the harasser's conduct was sexually explicit and vulgar:

> To succeed on this theory, however, [the plaintiff] must produce "direct comparative evidence about how the alleged harasser treated *members* of both sexes in a mixed-sex workplace." *Oncale,* 523 U.S. at 80-81, 118 S.Ct. at 1002 (emphasis added). This [the plaintiff] has failed to do. He has shown not that Smith and Allen treated *men* differently than women, but that they treated *Davis* differently than all other members of the Coastal workforce, whether male or female. If anything, this showing actually undermines Davis's claim: It suggests that Smith and Allen targeted Davis because of his behavior as an individual rather than because of his sex.

Id. (emphasis in original); and see Holman v. Indiana, 211 F.3d 399, 405 (7th Cir. 2000), where a husband and wife brought claims as co-plaintiffs against a single harasser who was a supervisor to both of them in the same workplace.  The Seventh Circuit upheld the dismissal of their sexual harassment claims "concluding that the [plaintiffs] could not claim *discrimination* because they had alleged that their supervisor had been sexually harassing *both of them* by soliciting sex from each of them. Thus, applying *Oncale*, the district court reasoned that 'neither was subjected to disadvantageous terms or conditions of employment to which members of the other sex were not exposed.' *Holman*, 24 F.Supp.2d at 915. We agree." Id. (emphasis in original).

discriminatory), Title VII is not a statute prohibiting harassment, but one prohibiting *discrimination*.   This is an important distinction.   The Eleventh Circuit recently reiterated that the "the central premise of Title VII [is that] workers are to be protected from *discrimination* on account of gender in the workplace" and that ""Title VII does not prohibit profanity alone, however profane. It does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment *that discriminates based on a protected category such as sex*."   Id. at 809, 813 (quoting Baldwin v. Blue Cross/Blue Shield of Alabama, 480 F.3d 1287, 1301-02 (11th Cir. 2007)) (emphasis added).

Although conduct that is not directed specifically at a plaintiff may nonetheless be actionable under Title VII, the underlying principle that the plaintiff must be a member of the targeted protected group remains, and is critical to Title VII.   Reeves, 594 F.3d at 807, 811 (citing Yuknis v. First Student, Inc., 481 F.3d 552, 553–54 (7th Cir.2007) (observing that comments need not be directed specifically at a person to be discriminatory; comments addressed to the plaintiff's "target area"—that is, her protected group—may constitute actionable harassment.)).   So, as a threshold issue in any Title VII claim, the "plaintiff must show that [his] employer discriminated because of [his] membership in a protected group."   Id. at 807.

**B. Richardson Did Not Suffer Sexual Discrimination Because Thompson's Conduct Was Not Motivated by Richardson's Sex.**

    1. <u>Thompson's and Richardson's Relationship</u>

Thompson's conduct toward Richardson was not based on Richardson's sex, but apparently due to the close friendship between the two. Richardson and Thompson were long-time friends. Their eleven-year friendship pre-dated their mutual employment at Bay District Schools.  They socialized with each other and with their wives.  They were more than co-workers.  Richardson considered himself Thompson's right hand man.  They went to lunch all the time. (See Def. Statement of Facts ¶ 3)

Initially, Richardson treated any issue he had with Thompson as a conflict between friends (Def. Facts ¶ 6).  He talked to Thompson after he learned about his call to his wife commenting on her breast and looks. (Id.). This was a matter of one friend misunderstanding a friendship and disrespecting a friend's marriage. Richardson's sex had nothing to do with it. In fact, he was not even aware of the conversation until his wife told him about it. (Def. Facts ¶ 5).  It was totally unrelated to the workplace and unrelated to any form of workplace discrimination. What Richardson describes as Thompson's habit of engaging Richardson in overly sexual conversations with his long-time friend were certainly boorish, but they were

also apparently mistaken by Thompson as being appropriate banter between friends.[3] (Def. Facts ¶¶ 7, 9)

The testimony from everyone involved in this case indicates that Jimmy's behavior was not motivated by any desire to engage in sexual activities with the Plaintiff himself. (Def. Facts ¶10).  Richardson does state that months into this ongoing dialogue, following many refusals from Richardson, Thompson allegedly began to offer Richardson that he could join in the sex or watch. (Id.). However, this was apparently motivated by an effort to entice Richardson into compliance rather than any attempt by Thompson to actually engage in any sort of sexual activities with Richardson. (Id.). Throughout, Thompson was not seeking a homosexual experience with Richardson, or anyone else, but is accused of simply using Richardson in an effort to obtain a woman to engage in sexual activities with. (Def. Facts ¶¶ 7, 9, 10).  Accordingly, the first evidentiary route discussed in Oncale is not applicable here because Richardson has not presented any credible evidence that Thompson is a homosexual or wanted to engage in homosexual acts.  In fact, the exact opposite is true, he only wanted to have sex with women.

### 2.   Thompson Was Not Hostile Towards Males

Thompson's action also does not demonstrate a general hostility toward males in the work place as opposed to females.  Thompson supervised a department that at one time consisted of as many as ninety employees. (Def. Facts ¶ 2). The

---

[3] Defendant would note that Thompson's testimony reflects a vastly different scenario of who made comments about sexual encounters to whom, but for the purposes of summary judgment, Defendant treats the facts as presented by Richardson himself.

Maintenance Department is mixed gender workplace, with both males and females working there. Plaintiff has presented no evidence whatsoever to support an argument that Thompson gave either preferential or disadvantageous treatment to either males or females in the workplace.   Consequently, the second evidentiary route discussed in <u>Oncale</u> is not applicable because Richardson cannot present credible evidence that Thompson's conduct was motivated by any general animosity toward males in his workplace.

3. <u>Thompson Only Had Sexual Discussions With Richardson</u>

The third evidentiary route discussed in <u>Oncale</u> is also inapplicable because there is no evidence showing that Thompson had overtly sexual conversations with males or females, except for Richardson. (Def. Facts ¶ 8).   Likewise, there is no evidence that Thompson subjected either males or females to disparate treatment. (Def. Facts ¶ 15).   Thompson was not a serial harasser. There have been no harassment related complaints filed against him at BDS. (Def. Facts ¶ 15).   In fact, the testimony overwhelmingly demonstrates that Thompson's allegedly ill-mannered behavior was directed at Richardson alone. (Def. Facts ¶ 8). As stated in <u>Davis</u>, such a showing undermines Richardson's ability to argue that Thompson's treatment of Richardson was motivated by Richardson's membership in a protected class.   Instead, Richardson's, Thompson's, and Hoffman's testimony all demonstrate that the way Thompson related to Richardson was different than all of his other employees, and that was due to the fact that the two had a unique, personal history. (Def. Facts ¶ 3). Richardson himself admitted that Thompson only ever discussed

exchanging money for sex when no one else was present. (Def. Facts ¶8). Richardson states that Thompson spoke in hushed tones (Id.), which conjures images of a boy telling his best friend a secret on the school yard, not a grown man who treats male employees differently than female employees.  Accordingly, the third evidentiary route in <u>Oncale</u> is a not applicable because Richardson has not presented comparative evidence that Thompson's treatment of other individuals in the workplace was disparate with regard to gender.

4.   <u>Thompson's Goal Was to Have Sex with Women</u>

The undisputed facts in this case indicate that Thompson's alleged goal at all times was to engage in sexual relations with a woman. (Def. Facts ¶¶ 4, 7, 10).  Even to the extent that the object of his desires was at some point Richardson's wife, Richardson cannot demonstrate that, but for Richardson's own gender, Thompson would not have spoken to Richardson the way he did.  With the way Richardson describes Thompson's character and manners, one can easily imagine that if Richardson had been a long-time female friend of Thompson's, who was closely related to - or otherwise had a connection with - Richardson's wife, Thompson would have been just as persistent in seeking a female Richardson's help in procuring a sexual encounter with Mrs. Richardson, or whoever else the object of Thompson's desire was at the time.

Richardson's gender was also of no consequence with regard to Thompson's requests for help in procuring either a waitress or some other woman willing to accept money for sex with Thompson or with regard to his regularly sex-focused

14

banter and inquiries. (Def. Facts ¶4).   Richardson was simply a friend who Thompson wrongfully assumed he could both talk into participating in Thompson's desired escapades and speak openly and graphically to about sexual topics.  Friends with as much history as these two men have are just as likely to succumb to misperceived shared intentions and interests of a friend, whether the friend is male or female.

And even though Thompson's apparently goal was to have sex with women, he was not a serial harasser.  He only confided and shared this goal with Richardson. No one else reported any sexual inappropriate behavior by Thompson while at BDS. (Def. Facts ¶ 15).

Accordingly, the uncontroverted facts in this case, much of which come directly from Richardson's own testimony, demonstrate that there is no basis or proof of any gender-based animus or gender discrimination that exposed Richardson to disadvantageous terms or conditions of employment, to which he would not have been exposed but for his gender.

### III.    BDS is Entitled to Summary Judgment Because Richardson Failed to Establish a Proper Basis for BDS Liability.

Even assuming that Richardson can establish sex discrimination based on his sex, he cannot establish a basis for BDS's vicarious liability for Thompson's conduct – the final element of Richardson's *prima facie* case.

### A. Legal Standard for the Imposition of Employer Liability

The basis for an employer's liability under Title VII depends on the type of claim asserted; the crux being whether or not the claimant suffered an adverse tangible employment action.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998); Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1311 (11th Cir. 2001).  If the plaintiff actually suffered an adverse tangible employment action at the hands of the plaintiff's supervisor, the employer is strictly liable for the actions of its supervisor.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 762 (1998).  If, however, the plaintiff's harassment was limited to unfulfilled threats by a supervisor, the employer's liability is contingent, and the employer may raise affirmative defenses.  Id. at 754-55.

An employee suffers an adverse tangible employment action when he or she experiences a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.  Ellerth, 524 U.S. at 744.  In most cases, a tangible employment action actually causes direct economic harm to the claimant.  Id., at 761.

When no adverse tangible employment action is involved, the employer has an additional affirmative defense to avoid liability. The employer can establish the defense (a) by showing that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (b) by demonstrating that the plaintiff

employee unreasonably failed to take advantage of the employer's preventative or corrective opportunities to avoid harm.  Faragher, 524 U.S. at 807.  An employer can meet the "reasonable care" prong by promulgating an anti-harassment policy that includes a complaint procedure to bypass a supervisor in instances where the supervisor is the alleged harasser.  Also, the employer must show that it takes its policies seriously by engaging in prompt corrective action upon receiving complaints. Id., at 807-08; Ellerth, 524 U.S. at 773-74.  The plaintiff employee also has a duty to reasonably use the process in the employer's polices. Proof that an employee failed to fulfill his obligation to reasonably use the employer's polices to avoid harm, including the proper use of its complaint procedures, will "normally suffice to satisfy the employer's burden under the second element of the defense," but that is not the only method to establish the defense.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); see also, Madray v. Publix Supermarkets, Inc., 208 F.3d 1290, 1302 (11th Cir. 2000) (explaining that incomplete complaints to only mid-level managers, in addition to plaintiff's assurances that she would contact the appropriate management, constituted evidence that the employee unreasonably failed to take advantage of her employer's complaint procedures).

The Eleventh Circuit's opinion in Coates v. Sundor Brands, Inc., 164 F.3d 1361, 1365 (11th Cir. 1999) is particularly instructive in the instant case.  In Coates, the plaintiff, over a period of approximately one year, spoke with various members of management within her company regarding a co-worker's unwelcome sexual advances. Id. at 1363 (the harasser's behavior included "offering her money for sex,

calling her at home and leaving unwelcome amorous messages, and threatening to kidnap her and take her to Arkansas"). Her first complaint was made to a co-worker, who subsequently convinced the plaintiff to meet with her and the Human Resources Manager. At that point, plaintiff and the co-worker who she had confided in informed the Human Resources Manager of the existing behavior. All agreed that the co-worker, who was a trusted confidant among everyone in the workplace, would speak directly to the harasser. The plaintiff also asked that "no steps be taken at that time to alter her work assignments," which necessarily meant that she would continue to be in constant contact with her harasser. Id. at 1364. Following this meeting, the Human Resources Manager reasonably believed that the issue was handled and that the plaintiff required no further assistance. Noting that the "appropriate inquiry at this stage is to ask what measures [the Human Resources Manager] reasonably believed had been taken to address the problem," the Eleventh Circuit held that although an appropriate manager was certainly on notice of the harassment allegation at that time, the Human Resources Manager's response was reasonable under the circumstances. Id.

A few months later the plaintiff in Coates presented another plant manager with a note in which the harasser had offered plaintiff "$100 for 45 minutes of hugging and kissing." Id. at 1365. When viewed in the context of the conversation, the Eleventh Circuit concluded that this did not put the manager on notice that the plaintiff was being sexually harassed. Id. (stating that the plaintiff "did not, in the context of the conversation, adequately apprise McLean of the dimensions of the

problem or even that there *was* a problem that required his attention, and he could not therefore reasonably have been expected to act to address it").

After another six months had elapsed, the plaintiff spoke to a consultant from the company, and even then requested that the consultant not alert upper management. However, the consultant recommended that the plaintiff consult the harasser's immediate supervisor, which the plaintiff finally did. Upon receipt of plaintiff's complaint, the harasser was immediately suspended and had resigned before the day was out. Id. at 1365-66. In ultimately affirming the district court's grant of summary judgment for the employer, the Eleventh Circuit stated "we necessarily conclude that no genuine issue of material fact exists to support a finding that [plaintiff] acted reasonably to put [her employer] on notice of the problem or that, when notice was given, [her employer] responded unreasonably to her complaint." Id. at 1366.

> **B. Richardson Did Not Suffer An Adverse Tangible Employment Action Because, Despite the Claims in his Complaint, He Remains Fully Employed By BDS**

Richardson's Complaint asserts that this is an action for "quid pro quo" (based upon an adverse tangible employment action) and "hostile work environment" (not based upon an adverse tangible employment action). (Doc. 11, ¶ 12). Richardson's Complaint further asserts that Richardson was terminated. (Doc. 11, ¶ 16). However, it is uncontroverted that Richardson's is still employed by BDS. (Def. Facts ¶ 24). To this day, Richardson remains in the same position with the

same salary, benefits, and seniority as he had at all times before, during, and after all incidents of alleged harassment and his reporting of same.[4] (Id.).

Richardson's Complaint does not plead an action for retaliation.  At his deposition, however, Richardson for the first time postulated that he suffered "retaliation" from the Defendant's failure to promote him to a position that Thompson, without any authority to do so, had allegedly assured Richardson that he would someday occupy. (Def. Facts ¶ 21). In the interim, this particular position has been eliminated as part of a district-wide effort to adjust to budget shortfalls. (Def. Facts ¶ 23).  In fact, Richardson himself made a suggestion to the Superintendent of Schools that the position was unnecessary and its elimination would be an excellent way for the district to trim the budget.[5] (Id.). The deposition of Thompson also confirms that it had become commonplace within the department that when one employee resigned, retired, or was let go, the district would opt not to fill that

---

[4] Defendant concedes that, due to global changes and severe budget deficits throughout the State of Florida, which have affected Bay District Schools, all Bay District Schools employees have experienced changes in their compensation, work load, etc. . . (Def. Facts ¶24). However, Richardson's contractual rights have not changed in any way that is unique to Richardson or Richardson's position. (Id.)  Although Richardson asserts that his work load has increased, he admits that this occurred prior to his complaint and was associated with the aforementioned budget-induced global changes. (Id.)

[5] In Richardson's e-mail to the Superintendent on March 27, 2011, he stated as follows:

> I can tell you now how to save about $120K a year.  Kenny Hoffman's position does not need to be filled.  The Supervisor of Maintenance could easily do it because it is mostly office people except for the painters.   You have a carpenter supervisor and a locksmith supervisor.  . . .  Those jobs could easily be merged into one supervisor.  Just letting you know. (Def. Facts ¶23).

position as a way of saving money. (Def. Facts ¶ 2).  Other than this alleged "loss" of a promotion that Richardson had no actual entitlement to, Richardson at deposition confirmed that he in fact has not lost his job, he still works the same hours as he always has, and he still occupies the same office he always has. (Def. Facts ¶ 24). Richardson also has not been looking for another job in the District.  He has not sought another District position since at least January 1, 2010. (Id.).

Accordingly, Richardson has not suffered an adverse tangible employment action, and BDS may assert its affirmative defenses to vicarious liability.

### C. BDS Exercised Reasonable Care to Prevent and Promptly Correct Any Sexually Harassing Behavior and Richardson Unreasonably Failed to Take Advantage of BDS's Preventative or Corrective Opportunities to Avoid Harm.

Defendant had and still maintains an anti-harassment policy. The policy has a mechanism to bypass a person's supervisor when the supervisor is the alleged harasser. Defendant has properly promulgated such policy.  In fact, weeks prior to Richardson's complaint to the Superintendent, Defendant sent the policy to all employees via e-mail as a refresher for all. (See Def. Facts ¶ 25).

As soon as the Superintendent and Human Resources Director were made aware of Richardson's situation, BDS took extremely prompt and decisive action. Richardson's own deposition testimony states that he received immediate responses to his e-mail and was contacted by the Sheriff's Department at BDS's request.  As a result of BDS's actions, Thompson was arrested for solicitation within

a day of Richardson's emailed complaint. And Thompson subsequently resigned his employment with BDS. (See Def. Facts ¶19).

Prior to his email complaint on March 22, 2011, Richardson failed to take advantage of BDS's various and extensive anti-harassment policies and reporting mechanisms. (Def. Facts ¶ 26).  Instead, Richardson twice took the matter into his own hands by discussing this behavior with Thompson directly. (Def. Facts ¶¶ 6, 11).  The first such occurrence was in October of 2009, a full seventeen months before Richardson alerted the Superintendent. (Def. Facts ¶ 6). Following his conversation with Richardson, Thompson's conduct calmed down for a period of time, but it eventually resumed. (Def. facts ¶¶ 6, 7).  After Thompson's conduct resumed, Richardson confirmed at deposition that he failed to exhaust or examine the reporting procedures available to him. (Def. Facts ¶ 26).  He did not look at BDS's anti-discrimination policies or its complaint forms. (Id.).  He never contacted BDS's Human Resources Department about these incidents that he claimed were troubling him deeply. (Id.). Had Richardson availed himself of Defendant's protections in 2009, the lion's share of the treatment he complains of could have been avoided.

Richardson also states that he reported the problem to his immediate supervisor, Kenny Hoffman, sometime between January and June of 2010. (Def. Facts ¶¶ 1, 13). But both Richardson and Hoffman agreed that Thompson's actions did not amount to sexual harassment. (Def. Facts ¶ 14). Thus, no further action was required by BDS policy, and BDS was never placed on notice of any sexual

harassment problem. Both Richardson's March 22, 2011 e-mail to the Superintendent and Hoffman's deposition testimony demonstrate that, at most, Richardson told Hoffman only that Thompson had called Richardson's wife and commented about her breasts. (Def. Facts ¶ 13). Hoffman, knowing that Richardson and Thompson have always been very close friends, thought the whole situation boiled down to "friends being friends" and did not feel that it was a work issue at all. (Def. Facts ¶ 14). However, when Richardson told Hoffman everything on March 8, 2011, Hoffman immediately told Richardson that Thompson's behavior needed to be reported to the district office. (Def. Facts ¶ 17). At that time, however, Richardson himself required that Hoffman not take such action because Richardson was soon to leave for vacation and did not want to spoil his time in Hawaii. (Id.).

As a result of Richardson's obstructionist conduct, which only served to prolong what he describes as an unbearable time in his life, Defendant was not given an opportunity to protect Richardson. By the time Defendant was notified, Richardson's testimony indicates that, as he sees it, the "damage," so to speak, had already been done. Thus, even though the District took incredibly decisive and swift action within just hours of his e-mail, Richardson claims they were too late. Just as the plaintiff in Coates could not show that she acted reasonably in giving her employer notice of her harassment, Richardson cannot either. Both Coates and Richardson unnecessarily prolonged the time before their employers were given an opportunity to protect them. Consequently, Defendant cannot be held liable for Richardson's actions that resulted in his own detriment.

## **Conclusion**

As shown above, there is no genuine issue of material fact and the Defendant is entitled to judgment as a matter of law on all claims in Richardson's Complaint. The Defendant therefore respectfully requests that this Court grant its Motion for Summary Judgment on all of Richardson's claims, and award Defendant its attorney fees, costs, and any other relief that this Court deems necessary.

Respectfully submitted this 8th day of March, 2013.

Harrison Sale McCloy

*/s/*Robert C Jackson
ROBERT C. JACKSON
Florida Bar No. 0149519
HEATHER K. HUDSON
Florida Bar No. 0091178
HARRISON SALE MCCLOY
P.O. Drawer 1579
Panama City, Florida 32402
Telephone: (850 )769-3434
Fax: (850) 769-6121

ATTORNEYS FOR DEFENDANT

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March, 8, 2013, I electronically filed the foregoing Motion for Summary Judgment with the Clerk of Court through ECF and that ECF will send a notice of the electronic filing to James Garrity at Marie A. Mattox, P.A., 310 East Bradford Road, Tallahassee, Florida 32303.

*/s/* Robert C. Jackson

ROBERT C. JACKSON