IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MICHAEL RICHARDSON,

    Plaintiff,

v.                                              CASE NO. 5:12-cv-201-RS-CJK

BAY DISTRICT SCHOOLS,

    Defendant.
_____/

## ORDER

Before me are Defendant's Motion for Summary Judgment (Doc. 36) and Plaintiff's Response (Doc. 43).

## I. STANDARD OF REVIEW

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

1

Thus, if reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).  However, a mere 'scintilla' of evidence supporting the nonmoving party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 251).

## II. BACKGROUND

I accept the facts in the light most favorable to Plaintiff.  *See Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1343 n.1 (11th Cir. 2002)).  " 'All reasonable doubts about the facts should be resolved in favor of the non-movant.' "  *Id.* (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir. 1982).

Plaintiff is currently employed by Defendant's Maintenance Department as a Material Controller.  He has been married to Hermana "Ana" Richardson for fifteen years. At the time of the alleged discrimination, Plaintiff's immediate supervisor was Kenny Hoffman.  The Supervisor of the Maintenance Department was James Thompson, who was Hoffman's supervisor. Plaintiff and Thompson

have known each other since 1998 and had a good relationship. They met through church and knew each other before Plaintiff became employed by Defendant. Plaintiff and Thompson would often socialize outside of work with their wives or during lunch.

At some point, their relationship began to deteriorate. During their lunch breaks, Thompson would frequently make comments of a sexual nature about young waitresses and Asian women. Doc. 36-2, p. 44-48. None of these comments were directed at Plaintiff's wife until September or October of 2009. *Id.* Ana reported to Plaintiff that Thompson called her at home and told her that she had "perky boobs" and was a very pretty woman. *Id.* at 37. Ana also told Plaintiff that Thompson offered her money for sexual favors. *Id.* Upon hearing this information, Plaintiff confronted Thompson, who assured Plaintiff he would not behave that way again. Doc. 42-9, p. 54. For several weeks, Thompson's behavior improved, and he did not make any more sexual comments. Plaintiff and Thompson also temporarily stopped going to lunch together.

A few months after this incident, in early 2010, Plaintiff and Thompson began working on their friendship again and resumed going out to lunch together. Between January and June of 2010, Thompson offered Plaintiff money if Plaintiff would help convince one of the Asian waitresses to sleep with him. During this time, none of the comments were directed to or about Ana.

Sometime in early 2010, Plaintiff let his supervisor, Hoffman, know of Thompson's phone call to Ana in October of 2009. Plaintiff stated that "[Hoffman] did not feel like it was sexual harassment and I didn't either." Doc. 36-2, p. 69. Hoffman testified that when he first heard the report he "thought it was just, you know, friends being friends." Doc. 36-4, p. 6. Later in 2010, Plaintiff also confided in a co-worker, Tammy Miller, whom he described as his "best friend." Doc. 36-1, p. 68. At this time, Plaintiff did not report the behavior to anyone else employed by Defendant.

However, in November of 2010, Plaintiff, Ana, and Thompson attended the Maintenance Department's Thanksgiving dinner. After dinner, Thompson followed Plaintiff to the parking lot and said that he was no longer interested in other Asian women, he only wanted Plaintiff's wife. Doc. 49-2 at 66. The inappropriate sexual comments continued. However, Plaintiff testified that "[Thompson] never tried to have sex with me." *Id.* at 74. Additionally, Plaintiff claims that Thompson promised him Hoffman's position when he retired if Plaintiff would help get him an Asian woman. *Id.* at 78.

Thompson made a second phone call to Ana, indicating that he would pay her money for a sexual encounter. *Id.* at 80-81. Plaintiff confronted Thompson again, and Thompson assured Plaintiff it wouldn't happen again. Around this time, the occurence of the sexual comments was frequent and was causing Plaintiff to be

4

depressed. *Id.* at 80.  Plaintiff continued to go to lunch with Thompson because he was afraid he would be terminated.  *Id.* Some of Thompson's comments included whether Ana liked to "suck," and Thompson would tell Plaintiff to go home and "F Ana hard for me." *Id.* at 130.

Additionally, in February 2011, Plaintiff testified that Thompson began acting inappropriately towards a female employee Kim Hugenard. Doc. 42-9, p. 84. Plaintiff testified that "[Thompson] come bragging to me, he'd say Kim likes to hug, and he said, and I pulled over her to my crotch. And he would tell me things he did with Kim and stuff like that, bragging about it." *Id.*

In the first week of March 2011, Plaintiff recorded Thompson's conversation on tape showing that Thompson was soliciting Plaintiff's assistance in getting Ana to have sex with him in exchange for money.  On March 8, 2011, Plaintiff reported this to Hoffman and played the recording. Hoffman told Plaintiff that he needed to report Thompson's conduct to the district office; however, Plaintiff was planning to go to Hawaii and did not want the investigation to start before he left. Hoffman did not tell anyone until Plaintiff returned from his vacation, per Plaintiff's request.

On March 22, 2011, Plaintiff sent an email to Bill Husfelt, the Superintendent of Schools, and the Human Resource Director explaining the whole situation.  Doc. 42-2.  The HR Director conducted an investigation, and that same day, Defendant alerted the Sheriff's Department of Thompson's illegal activity.

Docs. 36-5, 36-6. Within a few hours, investigators from the Sheriff's department were at Plaintiff's home. Doc. 36-2, p. 113. The next day, Plaintiff and the Sheriff's Department coordinated a sting operation, and Thompson was arrested and charged with solicitation of prostitution.

Thompson was given the option to go in front of the school board or to resign, and he chose to resign. Hoffman was demoted because he failed to report Plaintiff's complaints immediately. The supervisor position that Hoffman held was eliminated after he was demoted and merged with another supervisor position. In fact, Plaintiff recommended this in an email to the superintendent:

> I can tell you now how to save about $120k a year. Kenny Hoffman's position does not need to be filled. The Supervisor of Maintenance could easily do it because it is mostly office people except for the painters. You have a carpenter supervisor and a locksmith supervisor…. These jobs could easily be merged into one supervisor. Just letting you know.

Doc. 36-2, p. 124.

Lastly, Defendant has mechanisms for reporting harassment, including anonymously online. The harassment policy was sent out in an email weeks prior to Plaintiff's complaint as a refresher for all employees, and a copy is posted in the Maintenance Department. Docs. 36-5, 36-6.

### III. ANALYSIS

To establish a *prima facie* case for a hostile work environment gender discrimination claim under Title VII, Plaintiff must show that (1) he belongs to a

6

protected group, (2) he has been subject to unwelcome sexual harassment, (3) the harassment was based on his sex, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive work environment, and (5) there is a basis to hold Defendant liable. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010). Defendant argues that Plaintiff has not met its burden as to prongs three and five.

"[I]t is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of [Plaintiff's] sex." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)(quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)). Therefore, Plaintiff must show that but for his gender, he would not have been subjected to Thompson's conduct.

It is well established that Title VII is not a "general civility code." *Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75, 81 (1998). "Title VII does not prohibit profanity alone, however profane. It does not prohibit harassment alone, however severe and pervasive. Instead, Title VII prohibits discrimination, including harassment that discriminates based on a protected category such as sex." *Reeves*, 594 F.3d at 809 (quoting *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1301-02 (11th Cir. 2007)). Title VII undoubtedly covers same-sex sexual harassment claims. *Oncale*, 523 U.S. at 80.

> [The Supreme] Court suggested three ways to prove that same-sex sexual behavior rises to the level of illegal sexual harassment: The plaintiff must show that the sexual behavior is motivated by actual homosexual desire; that the harassment is framed in "such sex-specific and derogatory terms… as to make it clear that the harasser is motivated by general hostility" toward members of the same gender in the workplace; or that there is "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."

*Davis v. Coastal Intern. Sec., Inc.*, 275 F.3d 1119, 1123 (D.C. Cir. 2002)(quoting *Oncale*, 523 U.S. at 80-81)).

No one argues that Thompson had any homosexual desires or that any other men were subject to Thompson's behavior—just Plaintiff. There is not any evidence that Thompson's comments and behavior were motivated by any general animosity towards males in the workplace.

Left with only the third option described in *Oncale* of showing comparative evidence about how Thompson treated members of both sexes, Plaintiff argues that "[Thompson] made these comments to Plaintiff *because Plaintiff was a man*. Defendant cannot show that this dialogue was also directed at female subordinates…." (Doc. 43, p. 4-5)(emphasis in original). Although Plaintiff emphasizes that the behavior was directed at him because he is male, that does not automatically make it so. The testimony shows that Thompson's behavior was directed to Richardson alone, not all males employed by Defendant. This is analogous to the situation in *Davis*. In that case, the D.C. Circuit stated:

> Invoking *Oncale's* third method of proof, Davis next argues that because Smith and Allen directed their behavior at him, and not at any female Coastal employees, they systematically treated men differently than women. To succeed on this theory, however, David must produce "direct comparative evidence about how the alleged harasser treated *members* of both sexes in a mixed-sex workplace." *Oncale*, 523 U.S. at 80-81, 118 S.Ct. at 1002 (emphasis added). This Davis has failed to do. He has shown not that Smith and Allen treated *men* differently than women, but that they treated *Davis* different than all other members of the Coastal workforce, whether male or female. If anything, this showing actually undermines Davis's claim: It suggests that Smith and Allen targeted Davis because of his behavior as an individual rather than because of his sex.

*Davis*, 275 F.3d at 1124 (emphasis in original). This is almost the exact case that we have here. Given the long friendship between Plaintiff and Thompson that started before they were co-workers and the lack of inappropriate comments directed at any other employees, it follows that Thompson's behavior was directed at Plaintiff because they were friends, not because Plaintiff is male.

Additionally, although Plaintiff argues in his response that Thompson's behavior was not directed at female employees (Doc. 43, p.4-5), in his statement of facts, Plaintiff states: "Also around February 2011, Mr. Thompson began acting in an inappropriate and offensive manner towards female employee Kim Hugenard. He would flirt with her, and brag about how she would hug him and how one time Mr. Thompson pulled her towards his crotch." Doc. 44, p. 8. This would also be contrary to proving that Thompson's behavior was directed towards Plaintiff because he is male. This shows that Thompson's inappropriate behavior extended

9

to both male and female employees and is therefore not discriminatory against one gender or the other.

Although it is undisputed that Thompson's behavior and comments were completely inappropriate and disrespectful, Plaintiff did not meet his burden of showing that this amounted to a hostile work environment *because of his sex*. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 25 (1993)(J. Ginsburg concurring). Plaintiff did not show that Thompson's behavior was discriminatory rather than offensive or directed at him because he is male. This is fatal to Plaintiff's complaint.

## IV. CONCLUSION

1. Defendant's Motion for Summary Judgment (Doc. 36) is **GRANTED**.
2. Defendant is awarded attorneys' fees and costs.
3. The Clerk is directed to close the case.

**ORDERED** on May 6, 2013.

/s/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**